IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| JOSHUA RIGSBY | § | |
| v. | § | CIVIL ACTION NO. 5:15cv8 |
| LT. WILLIAMS, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Joshua Rigsby, a former inmate of the Bi-State Justice Center proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). As Defendants, Rigsby named Warden Bob Page, Lt. Williams, Captain Jones, and LaSalle Corrections, the private entity which operates the jail.

**I. The Plaintiff's Complaint**

On November 1, 2014, Plaintiff was incarcerated at the Bi-State Justice Center in K Pod, Cell One. Some inmates flooded the cells, causing feces and urine to run into the dayroom as well as into the cells, including Rigsby's. Lt. Williams came on the pod and Plaintiff asked would the lieutenant allow him to clean his cell out because there was waste all over the floor and the inmates had not yet had dinner. Williams replied "hell no, y'all are going to eat with that shit and piss inside your cell tonight."

Lt. Williams had the dayroom cleaned up and then fed the prisoners in the cells, despite the fact there was waste matter and urine all over the floors. Williams picked up the trays and then made an inmate sanitation worker bring a mop to the pod. The sanitation worker used the same mop which had been used to clean the dayrooms to clean out the cells, including putting the dirty mop through the food tray slot through which the inmates get their food.

1

Plaintiff contends Williams violated his right to be free from cruel and unusual punishment by "sadistic extreme and excessive cruelty." He explains exposure to sewage and waste water is a serious risk to his health and carries a significant risk of disease. Lasalle Corrections failed to provide adequate staff or to make sure their policy provides inmates should not be exposed to sewage and Captain Jones did nothing to fix the problem. Instead, Jones did not answer the first grievance Plaintiff filed and responded to the second grievance with "a smart sarcastic remark." Warden Page also denied Plaintiff's grievance by saying there was no evidence, even though there is video from surveillance cameras showing what happened.

## II. The Motion to Dismiss

The Defendants have filed a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). The Defendants divide Plaintiff's complaint into a number of separate allegations: (1) the backup of the sewage; (2) Lt. Williams not allowing him to clean his cell; (3) Lt,. Williams making him eat in his cell; (4) the use of a dirty mop for cleanup; and (5) placing the dirty mop through the food slot, although allegations (4) and (5) refer to the same passage in Plaintiff's complaint. The Defendants further assert there is no basis for municipal liability against LaSalle Corporation.

### A. The Backup of the Sewage

The Defendants state this contention, which says other inmates caused the sewage to back up, does not make any allegations against any named Defendants. In addition, the Defendants aver Plaintiff did not exhaust his administrative remedies with regard to this claim.

### B. Not Allowing Cleanup

Plaintiff alleged Lt. Williams did not allow him to clean out his cell. The Defendants argue Plaintiff did not allege any actual harm, or no more than *de minimis* harm, as a result of a delay in permitting him to clean out his cell.

### C. Making Him Eat in his Cell

The Defendants again contend Plaintiff did not allege any harm other than having to eat under unpleasant conditions, or any harm was *de minimis*.

### D. & E. Using a Dirty Mop

The Defendants assert Plaintiff did not allege any harm, or no more than *de minimis* harm, as a result of the fact a dirty mop was used for cleanup and this mop was put through his food tray slot. The Defendants also maintain Plaintiff did not exhaust his administrative remedies on this claim.

### F. Municipal Liability

The Defendants argue Plaintiff did not set out any basis for municipal liability against LaSalle Corporation, which operates the Bowie County Correctional Facility at the Bi-State Justice Center.

## III. Plaintiff's Response to the Motion to Dismiss

Plaintiff maintains he did exhaust his administrative remedies, pointing to the Step One and Step Two grievances he filed. He asserts exposure to sewage can constitute a serious risk to inmate health or safety and thereby satisfy the objective component of the Eighth Amendment. Such exposure carries a significant risk of contracting infectious diseases and prisoners are not required to suffer serious medical problems before the condition is actionable.

Plaintiff states Lt. Williams knew of the conditions to which Plaintiff and other prisoners were exposed but did nothing to correct these conditions or remove Plaintiff and the others before making them eat inside the cells with human waste on the floor. Plaintiff asserts Williams cleaned up the dayroom for the safety of the officers who brought in the food cart, but still made the prisoners eat in their cells with human waste on the floor. He argues Lt. Williams cannot claim a lack of awareness concerning this situation.

Likewise, Plaintiff contends Lt. Williams knew the mop used to clean the human waste out of the dayroom was the same one used to clean out Plaintiff's cell, without any chemicals. Williams

could have obtained a clean mop because he knew he was not going to open the cell door and he was going to put the dirty mop through the food tray slot.

Warden Page did not investigate the problem at all but only told Plaintiff there was no evidence to support his claims, when all Page had to do was review the surveillance tapes. Plaintiff contends Page can be held liable if he knew of or purposefully avoided finding out about an Eighth Amendment violation. By separate motion, Plaintiff asked for voluntary dismissal of Captain Jones and LaSalle Corrections.

**IV. Plaintiff's Grievance**

Plaintiff's Step One grievance reads:

> I wrote a grievance form on Lt. Williams for making me as well as other inmates eat inside our cells with feces on the floor. On 11-1-14, 7 p.m., I was being held at the Bi-State Justice Center in K-Pod, Cell #1, on 11-1-14 [sic]. And some inmates had flooded they [sic] cell. And there was feces all on the floor in my cell, K-1. And the dayroom and in other inmates' cells as well. We had not eaten dinner and I asked Lt. Williams could I clean my cell out before he feed us dinner and he said 'hell no, you gonna eat with that piss and shit on the floor." So he made me and other inmates eat inside our cells with feces everywhere. I wrote a grievance on 11-1-14 about this and I still have not heard nothing back.

The response, signed by Captain Jones, reads:

> I have talked to you several times and completed an investigation on you. Not once have you stated to me about the issue you stated in this grievance. I will review the camera system to see what occurred and to see if your statement and the video match up.

Plaintiff's Step Two appeal of his grievance reads:

> I wrote a Step One grievance form on 11-1-14 on Lt. Williams for making me eat inside my cell with feces on the floor, I never heard anything back so I wrote another Step One using a copy of my first grievance on 11-19-14 and I got a response back from Captain Jones stating that he had talked to me several times and he have [sic] completed an investigation on me, and he said not once have I stated to him about Lt. Williams leaving me in my cell with feces and making me eat inside my cell with feces on the floor. And he would review the camera to see if my story matches up with what I am saying. I never said anything to him because I wrote a grievance Step One and I was following the grievance procedure. On 11-1-14 I was being abused at the Bi-State Justice Center (K-Pod cell #1) around 7 p.m. and some inmates had flooded they [sic] cell. And there was feces all on the floor in my cell {K-1) and in the dayroom.

The response to this grievance appeal, signed by Warden Page, reads:

> I have found no evidence to support your claim. If you are having problems as you state why have you not talked to medical about this as you were seen on 11-20 for a cold and 11-24 because of a fast heart rate? You need to put in a medical request if you are having medical issues.

**V. Legal Standards and Analysis**

  A. General Standards for Motions to Dismiss

    A motion to dismiss challenges the legal sufficiency of the complaint. Rader v. Cowart, 543 F.App'x 358, 2013 U.S. App. LEXIS 20415 (5th Cir., October 4, 2013); *see also* St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 440 n.8 (5th Cir. 2000). A complaint fails to state a claim upon which relief may be granted, and is thus legally insufficient, when it does not contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Rogers v. Boatwright, 709 F.3d 403, 407 (5th Cir. 2013). A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility the defendant acted unlawfully; where a complaint pleads facts "merely consistent" with a defendant's liability, it falls short of the line between possibility and plausibility of entitlement to relief. Id.

    While the complaint need not contain "detailed factual allegations," it must have more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint suffice if it provides naked assertions which are devoid of further factual enhancement. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007). Instead, the allegations must be enough to raise a right to relief above the speculative level, on the assumption all the allegations in the complaint are true, even if doubtful in fact. Id.; *see also* Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. Health Special Risk Inc., 756 F.3d 356, 360 (5th Cir. 2014).

B. Feces on the Floor

Plaintiff complains after his cell was flooded by other inmates, Lt. Williams made him remain in there long enough to eat dinner with the flooding still on the floor. He does not allege his food was contaminated by the sewage. After dinner, his cell was cleaned out with a dirty mop.

In Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998), Texas prisoner Robert Davis was placed in a management cell which was "just filthy," with "blood on the walls and excretion on the floor and bread loaf on the floor." He was given cleaning supplies, but kept in the cell for three days.

The district court dismissed Davis' claims because he did not allege an injury. On appeal, the Fifth Circuit held the district court did not abuse its discretion in dismissing the lawsuit because Davis' allegations did not rise to an Eighth Amendment violation. The court explained:

> Davis did not suffer an extreme deprivation of any "minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991). The Supreme Court has noted that "the length of confinement cannot be ignored.... A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686–87, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978). Davis was confined in the management cell for only three days. *Cf.* Smith v. Copeland, 87 F.3d 265, 269 (8th Cir.1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from an overflowed toilet in his cell). Furthermore, cleaning supplies were made available to Davis, mitigating any intolerable conditions. *See* Shakka v. Smith, 71 F.3d 162, 167–68 (4th Cir.1995) (no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him); Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir.1994) ("intolerable conditions lasted not more than 24 hours before the availability of adequate cleaning supplies could make them tolerable").
>
> Regardless of his claim on appeal to have been nauseous, Davis has not alleged the sort of deprivation of facilities for elementary sanitation that we have observed gives rise to unconstitutional confinement. *See* Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir.1983).

Id. at 1006.

While Plaintiff, unlike Davis, did not receive cleaning supplies, his pleadings indicate he was exposed to the conditions complained of for only a matter of hours; his cell was flooded, he was forced to eat dinner there, and it was cleaned up afterwards. Like Davis, Plaintiff did not show he suffered any injury as a result of this brief exposure. *See also* McCord v. Maggio, 927 F.2d 844, 848 (5th Cir. 1991) (inmate housed in "harsh and occasionally disgusting conditions" over an extended

period of time, including a 10-month period without a bunk during which he had to sleep on a mattress on the floor despite flooding and sewage backup; remanded for a determination of whether the plaintiff suffered a "significant injury" under the legal standard then in effect); McClure v. Foster, civil action no. 5:10cv78, 2011 U.S. Dist. LEXIS 14546 (E.D.Tex., January 7, 2011), *Report adopted at* 2011 U.S. Dist. LEXIS 15437 (E.D.Tex., February 16, 2011), *aff'd* 465 F.App'x 373, 2012 U.S. App. LEXIS 6385 (5th Cir., March 29, 2012). In McClure, the plaintiff complained he was placed in a very cold concrete cell with no clothes and the cell was dirty, with "pubic hair, hair, dirty, and bits of molded food," with "dry pee all over the toilet seat and back as well as the floor." He remained in the cell for three days. The district court, citing Davis and McCord, dismissed the lawsuit, and the Fifth Circuit affirmed.

Plaintiff argues in response there is no requirement to show he actually suffered future injury because exposure to sewage can constitute a serious risk to inmate health and thus satisfy the objective component of the Eighth Amendment. The Supreme Court has stated:

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year. ... That the Eighth Amendment protects against future harm to inmates is not a novel proposition. The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.' It is 'cruel and unusual punishment to hold convicted criminals in unsafe conditions.' It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event.

Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (citations omitted throughout).

In Helling, the plaintiff had a cellmate who smoked five packs of cigarettes per day, creating long-term exposure to environmental tobacco smoke with attendant health risks. *Compare* Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001) (occasional exposure to second-hand smoke on prison bus rides was "sporadic and fleeting" and did not rise to the level of a constitutional claim). This comports with Davis, citing Hutto, holding the duration of exposure to the

environmental toxin is a significant factor in determining whether the prisoner was exposed to an extreme deprivation of a minimal civilized measure of life's necessities. Wilson, 501 U.S. at 304.

Plaintiff complains of exposure to an environmental toxin of extremely short duration, lasting only a few hours. Even given the nature of the environmental toxin, consisting of waste water containing urine and feces, Plaintiff has not shown an exposure of such brief duration amounts to an extreme deprivation of the civilized measure of life's necessities. Davis, 157 F.3d at 1006.[1] This claim is without merit.

### C. The Dirty Mop

Plaintiff similarly argues Lt. Williams subjected him to cruel and unusual punishment by using a dirty mop and putting the mop through the food slot in his cell. He likewise does not show any harm from this action, nor does he demonstrate the use of the same mop to clean his cell as was used to clean the dayroom is "sure or very likely to cause needless suffering in the next week or month or year." Helling, 509 U.S. at 33. Although Plaintiff argues Lt. Williams could have obtained a clean mop, there is no legal requirement for a separate clean mop to be obtained for each cell on the pod. Nor does any incidental touching of the food tray slot by the mop violate the Constitution. *See* Grant v. Aubrey Cole Law Enforcement Center, civil action no. 1:09cv772, 2012 U.S. Dist. LEXIS 106482 (E.D.Tex., June 26, 2012), *Report adopted at* 2012 U.S. Dist. LEXIS 106481 (E.D.Tex., July 31, 2012) (dismissing claim of food being served through the same chute as cleaning mops for failure to state a claim upon which relief may be granted).

### D. Warden Page

Plaintiff complains of Warden Page's denial of his Step Two grievance, alleging Page did not conduct an adequate investigation. The Fifth Circuit has stated inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction and there

---

[1] Plaintiff's argument for a bright-line test that *any* exposure to a significant environmental toxin, no matter the duration, is harmful as a matter of law and will support a §1983 claim is not supported by Davis or the cases cited therein.

is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Edmond v. Martin, 100 F.3d 952, 1996 U.S. App. LEXIS 29268 (5th Cir., Oct. 2, 1996) (prisoner's claim a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, 31 F.App'x 153, 2001 U.S. App. LEXIS 28101 (5th Cir., December 11, 2001) (same). This claim is without merit.

As a general rule, lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient as to amount to a repudiation of constitutional rights and which is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987). Plaintiff has not met any of these criteria. To the extent he sues Warden Page because of the warden's position of authority, his claim is without merit.

Instead, Plaintiff argues Page can be liable if he knew of or purposefully avoided finding out about an Eighth Amendment violation. The Fifth Circuit has held supervisors can be liable for constitutional violations committed by subordinate employees when supervisors act or fail to act with deliberate indifference to violations of others' constitutional rights committed by their subordinates. Pena v. Givens, — F.App'x —, 2015 U.S. App. LEXIS 20591 (5th Cir., November 23, 2015), *citing* Atteberry v. Nocona General Hospital, 430 F.3d 245, 255 (5th Cir. 2005).

Plaintiff's pleadings do not show Warden Page acted with deliberate indifference to a violation of constitutional rights. Deliberate indifference is "an extremely high standard to meet." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). The defendant must know of and disregard an excessive risk to inmate health or safety; in other words, the defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825,

9

837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). It is not sufficient to show an official should have inferred a risk posed to an inmate. Id.; Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (*en banc*). Plaintiff argues Warden Page should have reviewed the video, but this falls well short of demonstrating the warden actually knew of and disregarded a substantial risk. *See* Farmer, 511 U.S. at 838 ("an official's failure to alleviate a significant risk which he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.")

Plaintiff's claim against Warden Page also fails because he did not show a constitutional violation occurred. The Fifth Circuit has observed "the warden could not have known about constitutional violations since there were no constitutional violations." Brauner v. Coody, 793 F.3d 493, 501 (5th Cir. 2015); *see also* Gibbs v. King, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986) (absent primary liability, there can be no supervisory liability). Warden Page's motion to dismiss should be granted.

### E. Captain Jones and LaSalle Corrections

Plaintiff has moved for dismissal of these defendants. This motion should be granted.

## VI. Conclusion

In Branough v. Moore, civil action no. 4:11cv823, 2012 WL 7827536 (E.D.Tex., August 28, 2012, *Report adopted at* 2013 WL 1313158 (E.D.Tex., March 28, 2013), the plaintiff Rex Branough complained about the medical care he received while a prisoner in the Fannin County Jail. In observing Branough's complaint "contained no allegations supporting any inference of the existence of a policy, practice or custom on the part of the 'Fannin County Jailers' depriving him of his federally protected right," this Court stated as follows:

> Plaintiff has not attempted to amend his complaint in order to meet the standard of pleading, although Defendants' Motion to Dismiss has been on file for over four months and he responded to it within three weeks. He clearly has had notice of his complaint's deficiencies.

In the present case, the Defendants have filed motions to dismiss, to which Plaintiff filed a response. The motions to dismiss gave Plaintiff notice of his complaint's deficiencies insofar as they related to these Defendants and Plaintiff has had ample time in which to correct these deficiencies. In Neitzke v. Williams, 490 U.S. 319, 329, 109 S.Ct. 1827, 1834 (1989), the Supreme Court stated under Fed. R. Civ. P. 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to correct deficiencies in his complaint; these procedures alert him to the legal theories underlying the defendant's challenge and enable him to respond by opposing the motion to dismiss on legal grounds or clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.

Plaintiff has failed to plead factual content allowing the court to draw the reasonable inference any of the Defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. He offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," which the Supreme Court explained are insufficient. Twombly, 550 U.S. at 555, 127 S.Ct. at 1965. Because Plaintiff's pleadings wholly fail to raise a right to relief above the speculative level, he has failed to state a claim upon which relief may be granted. It is accordingly

ORDERED the Plaintiff's motion for voluntary dismissal of the Defendants Captain Jones and LaSalle Corrections (docket no. 29) is GRANTED. These Defendants are DISMISSED from the lawsuit without prejudice. It is further

ORDERED the motion to dismiss filed by the Defendants Lt. Williams and Warden Page (docket no. 22) is GRANTED and the above-styled civil action is DISMISSED without prejudice. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**SIGNED this 14th day of January, 2016.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE